#27019-r-DG

**2014 S.D. 87**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KUSTOM CYCLES, INC.
d/b/a KLOCK WERKS,                                     Plaintiff and Appellee,

    v.

CLINT BOWYER,                                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge

* * * *

JACK THEELER
DUSTIN J. LUDENS of
Morgan Theeler, LLP
Mitchell, South Dakota                    Attorneys for plaintiff
                                          and appellee.


ALEX M. HAGEN
STEVEN W. SANFORD of
Caldwell, Sanford, Deibert
  & Garry, LLP
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

ARGUED ON
OCTOBER 7, 2014

OPINION FILED **12/10/14**

#27019

GILBERTSON, Chief Justice

[¶1.] Appellant, Clint Bowyer, appeals the First Judicial Circuit Court's denial of his motion to dismiss for lack of personal jurisdiction, pursuant to SDCL 15-6-12(b)(2). Bowyer argues that he does not have sufficient minimum contacts with South Dakota such that the circuit court could constitutionally assert personal jurisdiction over him. Bowyer asks this Court to reverse the circuit court's Order Denying Bowyer's Motion to Dismiss and to remand with instructions to dismiss the Complaint for lack of personal jurisdiction.

## Facts and Procedural History

[¶2.] Clint Bowyer is a professional race car driver who races for Michael Waltrip Racing in NASCAR's Sprint Cup Series. Bowyer resides in North Carolina and travels to various states to compete in NASCAR events. Bowyer is also a motorcycle enthusiast and has attended the motorcycle rally in Sturgis, South Dakota, on several occasions. Kustom Cycles, Inc., owned by Brian Klock, is a South Dakota corporation operating in Mitchell, South Dakota. Kustom Cycles specializes in designing motorcycle parts and the customization of motorcycles.

[¶3.] Klock and Bowyer first encountered each other at a NASCAR race in Daytona, Florida, in 2008. Later that fall, around November 9, the two again encountered one another at a NASCAR track in Phoenix, Arizona. Brook Phillips, the president of Total Performance, Inc., was present at this meeting. Prior to this date, Total Performance customized a 1949 Mercury automobile for Bowyer. Although the parties dispute who originated the idea, the parties agreed that Kustom Cycles would customize a motorcycle for Bowyer to match his 1949

Mercury. Bowyer asserts that Klock proposed trading his customization services for Bowyer's services in "promotional and endorsement pieces" for Klock and his vendors, as well as "special NASCAR access" for them.

[¶4.] Several communications relevant to this case occurred after the meeting in Phoenix. On November 11, 2008, and January 5, 2009, Phillips sent pictures of the 1949 Mercury to Kustom Cycles in order to assist Kustom Cycles in rendering concept images for the proposed customization. On January 2, 2009, Bowyer purchased a 2009 Harley Davidson motorcycle from a dealership in Mankato, Minnesota. Bowyer then contacted Kustom Cycles and requested that Kustom Cycles pick up the motorcycle and transport it to Mitchell for customization. Several days later, on January 9, 2009, Casey Bowyer—Clint Bowyer's brother and alleged agent—contacted Kustom Cycles to approve its concept images of the proposed customization. Kustom Cycles first delivered the motorcycle to Bowyer at his home in North Carolina on February 15, 2009. Apparently Bowyer was not satisfied, and Kustom Cycles returned the motorcycle to Mitchell for additional modifications. Over one month later, on March 25, 2009, Casey Bowyer contacted Kustom Cycles and requested pictures of the customized motorcycle. On April 17, 2009, Kustom Cycles delivered the motorcycle, for a second time, to Bowyer in North Carolina.

[¶5.] Meanwhile, Bowyer provided a number of services to Kustom Cycles. Bowyer arranged special access for Klock and his guests at a NASCAR race in Daytona, where they met and spoke with Bowyer. At that time, Bowyer also gained access to the track for Klock, who recorded himself riding the motorcycle onto the

track for use in promotional materials. Bowyer also attended a four-hour photo shoot and granted Kustom Cycles permission to use his name and image for promotional purposes.[1] After Bowyer provided these services, and almost eight months after Kustom Cycles completed delivery of the motorcycle to Bowyer, Kustom Cycles sent Bowyer a bill for the work in the amount of $30,788.45. Bowyer refused to pay the bill, insisting that Klock proposed—and Bowyer performed—compensation in the form of the promotions, endorsements, and special access to NASCAR events that Bowyer previously provided.

[¶6.] On November 12, 2010, Casey Bowyer participated in a telephone conference with Kustom Cycles in an effort to resolve the billing dispute. This discussion was unsuccessful, and on November 23, 2011, Kustom Cycles filed a complaint against Bowyer in South Dakota for payment of the bill. Bowyer moved the circuit court to dismiss for lack of personal jurisdiction on February 26, 2013. The circuit court heard arguments on the motion on November 26, 2013. The circuit judge announced his decision to rule against Bowyer at the hearing and entered the order denying the motion on January 14, 2014. Although neither party presented evidence at the hearing, the circuit judge entered findings of fact and conclusions of law based on the parties' written submissions. Bowyer filed a petition for discretionary appeal from the circuit court's order, which this Court granted by order of April 4, 2014.

---

1.  Bowyer's name and image apparently later appeared on several industry magazines and websites in connection with the motorcycle, including the cover of the June 2009 issue of NASCAR Illustrated.

[¶7.]    Bowyer raises two issues in this appeal:

1.    Whether Bowyer had sufficient minimum contacts to give South Dakota specific jurisdiction over him.

2.    Whether South Dakota's assertion of personal jurisdiction over Bowyer violated due process.

**Standard of Review**

[¶8.]    Bowyer's motion to dismiss under SDCL 15-6-12(b) is a challenge to the court's jurisdiction over the person and is a question of law that we review de novo. *Marschke v. Wratislaw*, 2007 S.D. 125, ¶ 8, 743 N.W.2d 402, 405. The ultimate question on review is the same as that on review of a motion for summary judgment: "[I]s [Bowyer] entitled to judgment as a matter of law?" *Id.* (quoting *Guthmiller v. Deloitte Touche, LLP*, 2005 S.D. 77, ¶ 4, 699 N.W.2d 493, 496) (internal quotation mark omitted). Although Kustom Cycles—the party seeking to establish the court's personal jurisdiction over the defendant—has the burden of showing a prima facie case of jurisdiction, *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003), "jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing[,]" *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). When a court does not hold an evidentiary hearing, and instead rests its determination of personal jurisdiction solely on written submissions, we review that court's decision "in the light most favorable to the nonmoving party." *Marschke*, 2007 S.D. 125, ¶ 9, 743 N.W.2d at 405 (quoting *Daktronics, Inc. v. LBW Tech Co.*, 2007 S.D. 80, ¶ 3, 737 N.W.2d 413, 416 (quoting *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003))) (internal quotation mark omitted). In such a case, "[f]or purposes of the [motion to dismiss], the court must treat as true all facts properly pled in the

complaint and resolve all doubts in favor of the pleader." *Id.* ¶ 8, 743 N.W.2d at 405 (quoting *Guthmiller*, 2005 S.D. 77, ¶ 4, 699 N.W.2d at 496). Furthermore, when a court does not make a personal jurisdiction determination on the merits—i.e., does not conduct an evidentiary hearing—we do not give deference to that court's factual findings. *See State v. Grand River Enters., Inc.*, 2008 S.D. 98, ¶ 30, 757 N.W.2d 305, 316. Therefore Kustom Cycles has the burden of establishing a prima facie case for personal jurisdiction over Bowyer; however, because the circuit court's determination was based only on written submissions, we treat Kustom Cycles's properly-pleaded, factual allegations as true in our de novo review of the circuit court's resolution of Bowyer's motion to dismiss.[2]

## Analysis and Decision

[¶9.] In order for a South Dakota court to have personal jurisdiction over a nonresident defendant, two conditions must be met. "The first inquiry is whether the legislature granted the court jurisdiction pursuant to South Dakota's Long Arm Statute, SDCL 15-7-2." *Daktronics*, 2007 S.D. 80, ¶ 4, 737 N.W.2d at 416. Second, the assertion of jurisdiction must "comport[] with federal due process

---

2. It appears the circuit court did not review any evidence other than the parties' written submissions, including several affidavits. Anticipating an appeal of its determination, however, the circuit court entered findings of fact and conclusions of law. Although such findings may be permitted, they are unnecessary on a motion to dismiss, SDCL 15-6-52(a), and as we have indicated, are not entitled to deference on review. In this case, the circuit court's findings closely mirror Kustom Cycles's factual allegations. Therefore while the effect of giving deference to the circuit court's factual findings would largely be the same as treating Kustom Cycles's properly-pleaded, factual allegations as true, our treatment of the relevant facts results from the application of the standard we have articulated and not from deference for the circuit court's factual findings.

requirements." *Id.* (quoting *Denver Truck & Trailer Sales, Inc. v. Design & Bldg. Servs., Inc.*, 2002 S.D. 127, ¶ 9, 653 N.W.2d 88, 91) (internal quotation mark omitted). Bowyer concedes that the reach of South Dakota's Long-Arm Statute, SDCL 15-7-2, is coextensive with the constitutional limitations of the Due Process Clause in this case. Therefore we proceed with the remaining question before us: Whether the circuit court's assertion of personal jurisdiction over Bowyer comports with the Due Process Clause.

[¶10.]     "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980)). In order for a judgment to be valid, due process requires a defendant to have "certain minimum contacts with [the state asserting jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). Although personal jurisdiction can be general or case-specific, *see Fiore*, ___ U.S. at ___ n.6, 134 S. Ct. at 1121 n.6, Kustom Cycles relies only on specific jurisdiction in this case. Therefore we apply a three-step analysis in determining whether a defendant has minimum contacts sufficient to give South Dakota personal jurisdiction over that defendant.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits

and protections of its laws. Second, the cause of action must arise from [the] defendant's activities directed at the forum state. Finally, the acts of [the] defendant must have substantial connection with the forum state to make the exercise of jurisdiction over [the] defendant a reasonable one.

*Marschke*, 2007 S.D. 125, ¶ 15, 743 N.W.2d at 407 (alterations in original) (quoting *Daktronics*, 2007 S.D. 80, ¶ 6, 737 N.W.2d at 417). Although Bowyer raised two issues on appeal—whether minimum contacts exist and whether the assertion of personal jurisdiction is reasonable in this case—both issues are subsumed in our three-step analysis. *See Daktronics*, 2007 S.D. 80, ¶ 6, 737 N.W.2d at 417 ("[W]e have established a three step test to determine whether minimum contacts exist and due process is satisfied."). *Compare Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320, 66 S. Ct. at 160) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"), *with Opp v. Nieuwsma*, 458 N.W.2d 352, 355 (S.D. 1990) ("Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one."). Because we conclude that Kustom Cycles failed to meet its burden under the first step, we need not discuss the second or third steps here.

[¶11.] In support of its assertion that Bowyer purposefully availed himself of the South Dakota forum, Kustom Cycles principally alleges that Bowyer knew that Kustom Cycles was a South Dakota entity and that the customization of the

motorcycle—the performance due from Kustom Cycles under the contract—would occur in South Dakota, that the contract was formed in South Dakota, that "numerous communications of Bowyer and his various agents were directed at South Dakota[,]" and that "Bowyer specifically requested that [the motorcycle] . . . be transported into South Dakota" on two occasions. We do not agree that these contacts—taken separately or together—meet the minimum requirements of due process and, therefore, we reverse.

[¶12.]    We begin by stressing that a proper determination of personal jurisdiction rests on an examination of the defendant's—not the plaintiff's—contacts with the forum. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the *defendant*, the forum, and the litigation." *Fiore*, ___ U.S. at ___, 134 S. Ct. at 1121 (emphasis added) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 1478, 79 L. Ed. 2d 790 (1984)) (internal quotation marks omitted). The United States Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at ___, 134 S. Ct. at 1122 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984)). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S. Ct. 571, 579, 62 L. Ed. 2d 516 (1980)). Rather, "it is essential in each case that there be some act by which the *defendant*

purposefully avails *itself* of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183 (emphasis added) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958)) (internal quotation mark omitted). Thus, personal jurisdiction is appropriate "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum[.]" *Id.* at 475-76, 105 S. Ct. at 2184 (citation omitted).[3]

[¶13.]          *a.      Significant activities.*

[¶14.]          Bowyer has not engaged in significant activities within South Dakota. The record suggests the parties negotiated the oral contract at issue in Florida and Arizona. Although Kustom Cycles claims that the contract was partially negotiated in South Dakota, it appears that this assertion refers to the communications the parties exchanged for the purpose of generating and approving a concept image for the modifications to the motorcycle—not bargaining regarding the essential terms of the contract. Even if the parties did partially negotiate the contract in South Dakota, however, we have previously observed that personal jurisdiction over a

---

3.      Legal practitioners must be aware of the distinction between "contacts" in personal-jurisdiction and choice-of-law analyses. While a choice-of-law analysis may consider the plaintiff's relevant contacts with the forum, a determination of personal jurisdiction considers only the defendant's. Consequently, even if the location of a plaintiff's performance "arguably might favor application of [South Dakota] law . . . , the fact that [South Dakota] may be the center of gravity for choice-of-law purposes does not mean that [South Dakota] has personal jurisdiction over the defendant." *Kulko v. Super. Ct. of Cal. In and For City and Cnty. of San Francisco*, 436 U.S. 84, 98, 98 S. Ct. 1690, 1700, 56 L. Ed. 2d 132 (1978) (quoting *Hanson*, 357 U.S. at 254, 78 S. Ct. at 1240) (internal quotation marks omitted).

defendant does not vest in a forum simply because the defendant is party to a contract formed in the forum. *See Marschke*, 2007 S.D. 125, ¶ 16, 743 N.W.2d at 408 ("[T]he existence of a contract is not dispositive of the issue [of minimum contacts]."). Similarly, a forum cannot assert personal jurisdiction over an absent, nonresident defendant simply because the defendant knew the plaintiff was a resident of the forum, or because the defendant knew the plaintiff's performance would occur in the forum. "The [United States Supreme] Court long ago rejected the notion that personal jurisdiction might turn on [such] 'mechanical' tests, or on 'conceptualistic . . . theories of the place of contracting or of performance[.]'" *Burger King*, 471 U.S. at 478-79, 105 S. Ct. at 2185 (third alteration in original) (citations omitted) (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S. Ct. 602, 604, 87 L. Ed. 777 (1943)).

[¶15.] Nor are the communications directed into South Dakota sufficient to establish jurisdiction in this case. Although Kustom Cycles asserts that Bowyer and his agents directed "numerous" communications into South Dakota, the Complaint and written submissions establish only a bare handful of communications, even when the factual assertions are viewed in a light most favorable to Kustom Cycles. The only such communication mentioned in the Complaint is that Bowyer requested that Kustom Cycles arrange transportation for the motorcycle Bowyer purchased in Mankato.[4] However, Klock alleged several

---

4. Although the Complaint claims this request occurred on November 11, 2008, this date is contradicted by the Affidavit of Brian Klock, which claims this conversation occurred sometime after January 2, 2009—the date Bowyer actually purchased the motorcycle.

additional communications in an affidavit offered to bolster Kustom Cycles's resistance to Bowyer's motion to dismiss. Klock claimed that Phillips—acting as Bowyer's agent—sent an email to Kustom Cycles on November 11, 2008, and again on January 5, 2009. Klock also claimed that, after Kustom Cycles sent concept images to Bowyer for approval on January 9, 2009, Bowyer responded by telephone and text messages. Additionally, Casey Bowyer requested progress pictures on March 25, 2009, following Bowyer's initial rejection of Kustom Cycles's first attempted delivery. Finally, on November 12, 2010—over a year and a half later— Casey Bowyer participated in a telephone negotiation aimed at obviating the need for litigation.

[¶16.] In the past, we have held a comparable number of communications between parties to be insufficient to establish minimum contacts. *See Denver Truck*, 2002 S.D. 127, ¶ 14, 653 N.W.2d at 92. Although there might be slightly more communications involved in this case than in *Denver Truck*, we conclude that the communications involved here are still "more minimal than 'minimum contacts' requires." *Id.* The circuit court also regarded the weight of these communications as insufficient. It said, "[I]f it was just a question of emails and telephone calls, we wouldn't have jurisdiction anyway." The communications at issue here do not establish jurisdiction because they in no way change the quality and nature of Bowyer's contact with this forum—this was nothing more than a "one-shot deal." *See Marschke*, 2007 S.D. 125, ¶ 24, 743 N.W.2d at 410.

[¶17.] Kustom Cycles also argues, and the circuit court found persuasive, that "[n]ot only once, but twice, Bowyer arranged for the transportation of his

[motorcycle] . . . into South Dakota." Although the presence of property within South Dakota may be relevant, *Fiore*, ___ U.S. at ___, 134 S. Ct. at 1122 (citing *Keeton*, 465 U.S. at 773-74, 104 S. Ct. at 1473) ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."), it is not controlling. The United States Supreme Court has said that "the presence of property in a State *may* bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S. Ct. 2569, 2581, 53 L. Ed. 2d 683 (1977) (emphasis added). However, "the presence of the property alone would not support the State's jurisdiction." *Id.* at 209, 97 S. Ct. at 2582. Thus, the presence of property within the forum is not required, but neither is it sufficient, to establish personal jurisdiction over a nonresident defendant. Instead, the presence of physical property in the forum is significant to the extent that it affects the quality and nature of the defendant's connection to the forum.

[¶18.] We are not persuaded that the mere presence of Bowyer's motorcycle in South Dakota constitutes significant activity within this forum. The property is not present, and the "underlying controversy between the plaintiff and the defendant" does not arise out of "claims to the property itself[.]" *Id.* at 207, 97 S. Ct. at 2581. The absence of the motorcycle from the forum suggests that Bowyer did not "expect[] to benefit from the State's protection of his interest." *See id.* at 208, 97 S. Ct. at 2581. Similarly, the absence of the motorcycle also negates "[t]he State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of

that property[.]" *See id.* (footnote omitted). Although Bowyer asked Kustom Cycles to transport the motorcycle into South Dakota, the primary—if not only—purpose for the motorcycle's presence in this forum was to enable Kustom Cycles to perform its contractual obligation to Bowyer. Likewise, the purpose for the motorcycle's return to this forum was to enable Kustom Cycles to finish performing its contractual obligation to Bowyer.[5]

[¶19.] Kustom Cycles invites us to count the number of times a product enters South Dakota and to correspondingly compound the contacts between a nonresident defendant and this forum—for purposes of asserting personal jurisdiction—even when all occurrences arise out of the same business transaction. While this may be appropriate in some cases, we are not convinced that a consumer's insistence on complete performance of a commercial services provider's contractual obligations necessarily changes the quality or nature of the nonresident defendant's relationship with this State. This approach could potentially place a nonresident defendant in the untenable position of choosing between rejecting nonconforming goods or services—and thereby risk a heightened chance of being haled into a foreign jurisdiction—on the one hand, and accepting those goods or services, despite their nonconformance, on the other. Such a situation would place too much power in the hands of a plaintiff to unilaterally affect the minimum

---

5. The Affidavit of Brian Klock states, "On or about February 17, 2009, Defendant test rode the customized motorcycle and requested that Plaintiff transport it back to Mitchell, South Dakota for *final* adjustments and alterations." (Emphasis added.)

contacts analysis—an analysis meant to be driven by an examination of the defendant's acts.

[¶20.]     Even if we were to credit Bowyer with two trips into the forum, however, the second trip is susceptible of the same criticism as the first: "[T]he plaintiff cannot be the only link between the defendant and the forum." *Fiore*, ___ U.S. at ___, 134 S. Ct. at 1122.  Rather, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at ___, 134 S. Ct. at 1123 (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2174).  The parties met in Florida.  The idea of Kustom Cycles customizing a motorcycle for Bowyer originated in Arizona. We see nothing in the Complaint or written submissions that suggests Bowyer sought out a South Dakota customizer of motorcycles and incidentally found Kustom Cycles; rather, Bowyer met a customizer of motorcycles that, incidentally, operates in South Dakota.  Thus, the motorcycle's first trip into South Dakota is nothing more than an attenuated contact resulting from Bowyer's interaction with Kustom Cycles, and the second trip is even more attenuated than the first.

[¶21.]     b.     *Continuing obligations.*

[¶22.]     We are likewise unconvinced that Bowyer created continuing obligations in South Dakota.  However, Kustom Cycles maintains that personal jurisdiction is appropriate in this case according to our decision in *Daktronics*.  We summarized the facts of *Daktronics* in *Marschke v. Wratislaw*.

> The California defendant entered into a three-year consulting
> contract with a South Dakota corporation for the purpose of
> assisting the corporation's effort to secure [overseas] contracts.

> Prior to the agreement, the defendant made telephone calls and sent e-mails and faxes to South Dakota. The defendant visited the corporation's headquarters in South Dakota at the corporation's expense. There, the two parties discussed the potential business venture. After her South Dakota visit, the defendant directed more communications to the corporation in South Dakota. Once the agreement was finalized, the defendant directed status reports and requests for reimbursement to South Dakota. Payments for services and reimbursements were sent to the defendant from South Dakota.

2007 S.D. 125, ¶ 20, 743 N.W.2d at 409 (citations omitted). Although the argument centered on "which party initiated contact or first solicited the other's business[,]" *id.* (citing *Daktronics*, 2007 S.D. 80, ¶ 10, 737 N.W.2d at 417), we noted that "[i]t is [ordinarily] not significant that one or the other party initiated the relationship." *Daktronics*, 2007 S.D. 80, ¶ 10, 737 N.W.2d at 418 (alterations in original) (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 151 (3d Cir. 2001)) (internal quotation marks omitted). "Rather, 'the intention to establish a common venture extending over a substantial period of time is a more important consideration.'" *Id.* (quoting *Deutz*, 270 F.3d at 151). Thus, we upheld the circuit court's assertion of personal jurisdiction over the nonresident defendant because "[p]rovisions of the three-year contract contemplated continuous contacts between [the defendant] and Daktronics in South Dakota. Additionally, the contract's objective was that [the defendant's] successful performance of the contract would have a lasting impact on Daktronics's South Dakota office[.]" *Id.* ¶ 14, 737 N.W.2d at 419. The key is that the contract at issue in *Daktronics* created a *continuing obligation for the defendant* in South Dakota.

[¶23.] Relying on our decision in *Daktronics*, Kustom Cycles asserts that "[a] crucial factor which closely ties the transaction here to the South Dakota forum is

the place of performance of the contract." According to Kustom Cycles, "the contract was for the customization of [Bowyer's] motorcycle, an act which [sic] occurred almost exclusively *within* the forum[.]" Kustom Cycles again confuses the location of its own performance and obligations with that of Bowyer's. Nothing in the Complaint or written submissions suggests that the agreement between the parties created any continuing obligations in South Dakota for Bowyer. Kustom Cycles does not dispute Bowyer's claim that the services he provided to Kustom Cycles occurred exclusively outside South Dakota. On the other hand, if we are to believe Kustom Cycles and conclude that the services Bowyer actually rendered were not consideration for the customization of the motorcycle, and instead conclude that the only performance due from Bowyer was payment of the invoice—generated months after delivery of the motorcycle and after Bowyer provided varied services to Klock—then the duration of Bowyer's obligation can hardly be considered anything more than a "one-shot deal." In relying on *Daktronics* to assert that personal jurisdiction over a nonresident defendant is appropriate when the plaintiff's contractual obligations occur "almost exclusively" within the forum, Kustom Cycles ignores our emphasis in *Daktronics* that the defendant "knew she was entering into an *ongoing relationship* with a South Dakota corporation and assuming obligations that would directly affect the corporation." *Id.* ¶ 15, 737 N.W.2d at 419 (emphasis added). The only obligation in South Dakota that the contract potentially created for Bowyer, according to Kustom Cycles, was not a continuing obligation like that displayed in *Daktronics*.

[¶24.]     Kustom Cycles's position is flawed at an even more fundamental level, however, in emphasizing the distinction between a contract for the sale of goods and one for services. Kustom Cycles claims that "[a] services contract contemplates a continued connection between the out-of-state party and the forum" and that "requesting the performance of services to be provided within the forum gives rise to a more substantial connection with the forum[.]" While this might be true in some cases, it is not necessarily so. To the contrary, the United States Supreme Court has clearly stated that "the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application[.]" *Kulko v. Super. Ct. of Cal. In and For City and Cnty. of San Francisco*, 436 U.S. 84, 92, 98 S. Ct. 1690, 1697, 56 L. Ed. 2d 132 (1978) (citing *Denckla*, 357 U.S. at 246, 78 S. Ct. at 1235). If the terms of the services contract create continuing obligations in the forum for the defendant, such as in *Daktronics*, then personal jurisdiction may be appropriate. If so, however, it is because of the quality and nature of those contacts, not because a services contract necessarily creates a stronger connection to a forum than a contract for the sale of goods. To conclude otherwise is essentially to advocate the type of mechanical test prohibited by the Supreme Court. Although Kustom Cycles may be correct in its assumption that a contract for services might lead to more contacts, the nature of a services contract does not inherently command greater consideration in the minimum contacts analysis. In a case like this, where the only performance due from the nonresident defendant is a one-time obligation to pay a sum of money, personal jurisdiction cannot be established by virtue of the duration of the plaintiff's

performance of its contractual obligations. To hold otherwise would, again, place too much power in the hands of the plaintiff to unilaterally affect the minimum contacts analysis.[6] Although the defendant's connection to the *plaintiff* might be dependent on the length of time required for the plaintiff to complete its performance, the defendant's connection to the *forum* is measured by the defendant's own obligations.

## Conclusion

[¶25.] Kustom Cycles misperceives the purpose behind decades of the United States Supreme Court's minimum contacts analysis. "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Fiore*, ___ U.S. at ___, 134 S. Ct. at 1122 (citing *World–Wide Volkswagen*, 444 U.S. at 291-92, 100 S. Ct. at 564). Like the United States Supreme Court, we recognize that the determination of personal jurisdiction "is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko*, 436 U.S. at 92, 98 S. Ct. at 1697 (quoting *Estin v. Estin*, 334 U.S. 541, 545, 68 S. Ct. 1213, 1216, 92 L. Ed. 1561 (1948)). What is clear, however, is that the Due Process Clause forbids a state from asserting jurisdiction over a nonresident defendant when that defendant lacks sufficient contacts with the state, itself. Neither a nonresident defendant's contacts with a resident plaintiff, nor a

---

6. Hanging personal jurisdiction on the duration of the plaintiff's performance, for example, could potentially allow a plaintiff to establish personal jurisdiction simply by delaying the completion of its contractual obligations. Such a situation would not only offend due process, it might also encourage the violation of contractual obligations.

resident plaintiff's contacts with the forum, can compensate for such a deficiency. Bowyer's minimal contacts with South Dakota do not amount to substantial activity, and his agreement with Kustom Cycles did not create continuing obligations in this forum. Therefore those contacts do not meet the "minimum contacts" required to satisfy the Due Process Clause. Kustom Cycles did not meet its burden of establishing a prima facie case of personal jurisdiction over Bowyer, and the circuit court erred when it denied Bowyer's motion to dismiss for lack of personal jurisdiction. Consequently, we reverse.

[¶26.]       KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.