#29691-r-JMK
**2022 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| CATHERINE DAVIS, | Plaintiff and Appellee, |
| v. | |
| RICHARD OTTEN, | Defendant, |
| and | |
| MEEMIC INSURANCE COMPANY, | Defendant and Appellant. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. COMER
Judge

\* \* \* \*

EARL G. GREENE, III
SUSAN B. MEYER of
Gordon & Rees, LLP
Rapid City, South Dakota                  Attorneys for defendant
                                          and appellant.


DEAN FAUST of
Moore-Faust Law Group
Rapid City, South Dakota                  Attorneys for plaintiff
                                          and appellee.

\* \* \* \*

ARGUED
APRIL 27, 2022
OPINION FILED **07/13/22**

KERN, Justice

[¶1.] Meemic Insurance Company (Meemic) appeals from the circuit court's order denying its motion to dismiss for lack of personal jurisdiction. Meemic contends that it lacked the necessary minimum contacts with South Dakota to enable the court to exercise personal jurisdiction under South Dakota's long arm statute, SDCL 15-7-2, or under the principles of federal due process. We reverse.

**Facts and Procedural History**

[¶2.] On July 28, 2019, at approximately 6:18 p.m., Catherine Davis was riding as a passenger on William Laeder's 2009 Harley Davidson motorcycle. Davis and Laeder, both residents of Michigan, were traveling eastbound on US Highway 14A near Sturgis in Lawrence County. At the same time, Richard Otten, a resident of Sturgis, was traveling westbound on US Highway 14A on his 2012 Harley Davison motorcycle. Otten was driving at an excessive speed, which other motorcycle riders who witnessed the accident estimated to be around 55 miles per hour on a curve with a suggested maximum speed of 35 miles per hour. Otten failed to negotiate a turn and crossed into the oncoming traffic lane, colliding head on with Davis and Laeder. Davis, Laeder, and Otten sustained incapacitating injuries. Laeder and Otten were transported to Sturgis Regional Hospital while Davis was transported to Rapid City Regional Hospital. Davis suffered serious life altering injuries resulting in alleged medical expenses and damages exceeding $330,000. Davis alleges she has been unable to work following the accident.

[¶3.] Prior to the accident, Meemic, a property and casualty insurance company organized under the laws of Michigan, had issued an insurance policy to

Davis.[1] The policy was issued in Michigan and provided Davis coverage for uninsured and underinsured motorist claims, subject to the policy's terms and conditions. Meemic's policies are offered in compliance with Michigan law with respect to personal injury protection, property protection, residual liability coverage, and uninsured/underinsured coverage. Meemic is not authorized to write insurance policies in South Dakota. The policy was in effect at the time of the accident.

[¶4.]     Otten was insured through a State Farm policy with liability limits of $25,000. State Farm offered the full amount of the $25,000 policy limits as settlement to Davis on September 20, 2019. On October 9, 2019, Davis sent a letter to Meemic discussing the $25,000 settlement offer provided by State Farm and identifying medical costs for Davis in excess of $231,000 and the need for continued treatment. The letter made claim under any and all coverages available under Davis's insurance policy, including underinsured coverage. On July 24, 2020, Meemic issued a letter denying coverage, noting that the terms and conditions of Davis's policy do not provide coverage for accidents involving motorcycles.

[¶5.]     On November 23, 2020, a Meemic representative contacted counsel for Davis via email and voicemail offering to settle the claim for $75,000. Counsel did not respond. Meemic repeated the offer by voicemail again on December 2, 2020, to which counsel again did not respond. Meemic called a third time on January 20,

---

1.     The insurance policy was not admitted into evidence and is not included in the record.

2021, this time speaking with a receptionist at Davis's attorney's firm and requesting a return call.

[¶6.] On March 4, 2021, Davis filed a complaint against Otten and Meemic. Davis alleged that Meemic breached its insurance contract with Davis by neglecting, refusing, or failing to compensate Davis under the underinsured motorist coverage and no-fault insurance terms of her policy.

[¶7.] On April 9, 2021, Meemic filed a motion to dismiss for want of personal jurisdiction pursuant to SDCL 15-6-12(b)(2) and failure to state a claim upon which relief can be granted pursuant to SDCL 15-6-12(b)(5). In its brief in support of the motion to dismiss, Meemic claimed it was not subject to jurisdiction under South Dakota's long arm statute because it did not engage in any acts enumerated in the statute that would subject it to jurisdiction. Meemic further claimed that even if South Dakota's long arm statute applied, under a due process analysis, Meemic did not have sufficient minimum contacts with the state to support a finding that Meemic purposefully availed itself of the privilege of conducting activities within the state, thereby invoking the benefits and protections of South Dakota's laws.

[¶8.] A hearing was held on Meemic's motion to dismiss for lack of personal jurisdiction on May 18, 2021. During the hearing, Davis's attorney first asserted that the motion to dismiss need not be decided because "the underinsured motorist claim" had been settled, noting that on May 5, 2021, he sent a letter on his client's behalf to Meemic accepting Meemic's November 3, 2020 settlement offer of $75,000. In response, Meemic contended that no settlement occurred because Davis's initiation of the lawsuit operated either as a rejection of or counteroffer to its

previous settlement offer. At the conclusion of the hearing, the court denied Meemic's motion to dismiss. It did not address the question whether the claim had been settled. After the circuit court entered its order denying the motion to dismiss, Meemic filed a petition for intermediate appeal, which we granted on August 6, 2021.

## Standard of Review

[¶9.]    "A motion to dismiss under SDCL 15-6-12(b)(2) 'is a challenge to the court's jurisdiction over the person and is a question of law that we review de novo.'" *Zhi Gang Zhang v. Rasmus*, 2019 S.D. 46, ¶ 17, 932 N.W.2d 153, 159 (quoting *Kustom Cycles, Inc. v. Bowyer*, 2014 S.D. 87, ¶ 8, 857 N.W.2d 401, 405). "We review a [circuit] court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party." *Marschke v. Wratislaw*, 2007 S.D. 125, ¶ 9, 743 N.W.2d 402, 405 (citation omitted).

## Analysis and Decision

[¶10.]    Meemic contends that it did not engage in any of the acts enumerated in SDCL 15-7-2, South Dakota's long arm statute, in order to support the circuit court's exercise of personal jurisdiction. Meemic argues that none of the underlying facts support personal jurisdiction under the long arm statute and that its only involvement in the litigation in South Dakota was filing a motion to dismiss. Further, Meemic asserts that the subject matter of Davis's claim against Meemic springs from a contract, not a tort, and involves an issue between two Michigan residents, falling within the purview of Michigan law. Turning to a due process analysis, Meemic points to *International Shoe Co. v. Washington* to support its view

that even if South Dakota's long arm statute applies, the necessary "traditional notions of fair play and substantial justice" prong for constitutional personal jurisdiction cannot be met. 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (cleaned up). Meemic asserts that as the defendant, it did not engage in continuous contacts with South Dakota sufficient to purposefully avail itself to the privilege of conducting activities within the state.

[¶11.] Davis responds, first, regarding South Dakota's long arm statute, that while Meemic may not sell insurance policies in South Dakota, it is aware that policyholders will travel in all states and at times be involved in collisions in states other than where Meemic sells policies. Next, Davis argues that personal jurisdiction is proper under the long arm statute because her claims arose from the commission of a tort in South Dakota, making South Dakota the best forum for determining damages. Additionally, Davis asserts that the risk of an insured being involved in a collision with an underinsured motorist while in South Dakota was foreseeable to Meemic at the time of contracting, bringing Meemic within the court's jurisdiction. Davis also contends that the requirements of federal due process are met in this case, specifically asserting that Meemic purposefully availed itself of the privilege of acting in South Dakota and to the benefits and protections of its laws by selling insurance policies effective in all states, including South Dakota. Furthermore, Davis claims that Meemic satisfies the requirement of having

directed activities at South Dakota by selling policies that cover insureds that may drive within the state.[2]

[¶12.]     For South Dakota to exercise personal jurisdiction over a non-resident party, two conditions must be satisfied. *Kustom Cycles, Inc.*, 2014 S.D. 87, ¶ 9, 857 N.W.2d at 406. First, the court must determine that "the legislature granted the court jurisdiction pursuant to South Dakota's [l]ong [a]rm [s]tatute, SDCL 15-7-2." *Id.* (citation omitted). The court must then determine that the exercise of jurisdiction "comport[s] with federal due process requirements." *Id.* (citation omitted). "[T]he party seeking to establish the court's personal jurisdiction over the defendant . . . has the burden of showing a prima facie case of jurisdiction[.]" *Id.* ¶ 8, 857 N.W.2d at 405.[3]

---

2.     In addition, Davis contends that Meemic had an open settlement offer, which Davis accepted, resolving the claim and all issues with Meemic. Davis requests the Court to uphold the alleged acceptance of the settlement offer, which would render Meemic's appeal moot. However, in light of our determination that South Dakota lacks personal jurisdiction over Meemic in this case, neither this Court nor the circuit court can properly reach a conclusion on Davis's alleged settlement issue.

3.     In the South Dakota case *State v. Grand River Enterprises, Inc.*, we distinguished a decision by the Ohio Court of Appeals that described a rule under which the burden of proof regarding the question of personal jurisdiction shifts to the defendant after the party seeking to establish personal jurisdiction makes a prima facie case of jurisdiction. 2008 S.D. 98, ¶ 30, 757 N.W.2d 305, 316 ("the evidence, considered 'in a light most favorable to finding jurisdiction,' established a prima facie case sufficient to shift the burden to the defendant." (quoting *State v. Bulgartabac Holding Grp.*, 2007 WL 4395514, ¶ 18 (Ohio Ct. App. 2007))). To clarify, however, this rule does not reflect the state of the law in South Dakota where it is well settled that "[t]he party asserting personal jurisdiction has the burden of establishing a prima facie case, and the burden does not shift to the party challenging jurisdiction." *Burke v. Roughrider, Inc.*, 507 F. Supp. 2d 1040, 1042 (D.S.D. 2007) (citations omitted). Thus, the correct analysis is that

(continued . . .)

[¶13.]     South Dakota's long arm statute, SDCL 15-7-2, is to be construed broadly when evaluating jurisdiction. *Rothluebbers v. Obee*, 2003 S.D. 95, ¶ 24, 668 N.W.2d 313, 322 (citation omitted). Davis argues that four subsections of South Dakota's long arm statute in SDCL 15-7-2 apply to Meemic's actions:

> Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts:
>     (1) The transaction of any business within the state;
>     (2) The commission of any act which results in accrual within this state of a tort action;
>      . . .
>     (4) Contracting to insure any person, property, or risk located within this state at the time of contracting;
>      . . .
>     (11) Commencing or participating in negotiations, mediation, arbitration, or litigation involving subject matter located in whole or in part within the state[.]

[¶14.]     Here, Meemic is not subject to personal jurisdiction in South Dakota courts under the above subsections of SDCL 15-7-2 cited by Davis. Regarding subsection (1), Meemic has not transacted any business within South Dakota, and the policy with Davis was written in Michigan to Davis, a Michigan resident. As other courts have explained, the "mere unilateral act" of an insured driving into another state is not alone sufficient to permit a court's exercise of the state's long arm statute over that insured's out-of-state automobile insurer in a contract action. *Eagle Ins. Co. v. Gutierrez-Guzman*, 21 A.D.3d 489, 491 (N.Y. App. Div. 2005) (a car accident in New York involving an out-of-state resident insured by an out-of-state

_____

(. . . continued)
    included in *Kustom Cycles*, as expressed above, in which the burden of proof does not shift to the defendant at any point.

insurer did not provide the New York courts personal jurisdiction over a contract claim by the insured against the insurer).[4]

[¶15.] As to subsection (2), Meemic did not commit any act that resulted in the accrual of a tort action in South Dakota for two reasons. First, Meemic did not commit any acts in South Dakota resulting in a tort against Davis. *See State ex rel. Illinois Farmers Ins. Co. v. Koehr*, 834 S.W.2d 233, 234–35 (Mo. Ct. App. 1992) (when a car accident occurred in Missouri, plaintiffs' claim that their out-of-state insurer had committed a tort in Missouri was "a glaring non-sequitor [sic]" as the insurer had not participated in the tortious car accident). Second, Davis's claims against Meemic sound in contract, not tort. When an "insured is suing its regional insurer in a foreign state for breach of contract . . . the place of the accident is immaterial for purposes of jurisdiction, as the action is one to enforce a contract." *Carter v. Mississippi Farm Bureau Cas. Ins. Co.*, 109 P.3d 735, 741–42 (Mont. 2005).

[¶16.] Considering subsection (4), although Meemic contracted to insure the risk that its insured, Davis, could be involved in an automobile accident with an underinsured motorist in another state, including South Dakota, the underlying

---

4. *See also Johns v. Illinois Farmers Ins. Co.*, 2022 WL 796178 at *1 (9th Cir. 2022) (Montana court had no personal jurisdiction over an out-of-state insurer, despite the car accident at issue occurring in Montana, when the out-of-state "plaintiffs bought insurance policies from insurers that did no business in Montana and sought to insure vehicles that were not located in Montana at the time of contracting."); *Unser v. Prepared Ins. Co.*, 2017 WL 1347701 at *4 (W.Va. 2017) ("personal jurisdiction . . . within the contemplation of our long-arm statute does not rise or fall with the terms of the policies [the insurer] issues; rather, it arises only upon the purposeful actions of the [insurer] as enumerated in the statute").

coverage dispute here has nothing to do with the accident having occurred in South Dakota. As one court explained, "It is important to differentiate between a case in which a company's insured is sued as a result of a car accident in a foreign state, and the case at hand, where the insured is suing its regional insurer in a foreign state for breach of contract." *Carter*, 109 P.3d at 741; *see also* 16A Couch on Ins. § 228:34 (3d ed.) ("The fact that an insurer or insurance underwriting association is obligated to cover losses relating to an event occurring in another state is not sufficient to support a finding of either general or specific personal jurisdiction.").

[¶17.]     Moreover, SDCL 15-7-2 requires conduct on the part of the foreign defendant *in* the forum state, and the fact that an accident occurred in South Dakota is not conduct by Meemic in South Dakota. As noted above, the policy was written in Michigan, covering Davis, a Michigan resident, in accordance with Michigan law. And "an insurance contract between a foreign insured and a foreign insurer is not a contract within the forum state[.]" 16A Couch on Ins. § 228:30 (3d ed.); *see also Carter*, 109 P.3d at 740 ("While a promise to provide coverage throughout the United States may establish that an insurer has agreed to submit to jurisdiction in any forum that has jurisdiction to adjudicate claims against its insured, this agreement to defend and indemnify its insured in any state does not imply an agreement to allow its insured to bring suit against it in any state"); *Dix v. Peters*, 374 F. Supp. 3d 213, 226 (N.D.N.Y. 2019) ("While the accident triggering this dispute did occur in [the forum state], the minimum contacts must arise from action by the defendant himself, which create a substantial connection to the forum

state" (cleaned up)). Subsection (4), therefore, does not convey jurisdiction over Meemic under the long arm statute.

[¶18.] Finally, regarding subsection (11), Meemic has not commenced or participated in mediation or arbitration. Although subsection (11) also includes negotiations and Meemic made a few phone calls and sent emails attempting to negotiate with Davis regarding her underinsured motorist tort claim, there is no evidence in the record that Meemic's conduct involved "*subject matter located in whole or in part within* [*South Dakota.*]" *See* SDCL 15-7-2(11) (emphasis added). Rather, the subject matter of the negotiations here is the entitlement to uninsured motorist benefits pursuant to an insurance contract entered into by Davis and Meemic in Michigan; thus, the subject matter involved is located in whole in Michigan, not South Dakota. Finally, Meemic has not participated in litigation on the merits of Davis's claim in South Dakota, only filing a motion to dismiss for lack of personal jurisdiction. *Accord Met Life Auto and Home Ins. Co. v. Lester*, 2006 S.D. 62, ¶ 11, 719 N.W.2d 385, 387 ("A person may waive a lack of personal jurisdiction by submitting to the jurisdiction of the court and *pleading on the merits*" (emphasis added)).

[¶19.] Meemic's contacts with South Dakota are insufficient to subject Meemic to personal jurisdiction under South Dakota's long arm statute, SDCL 15-7-2. Further, even if Meemic's actions had satisfied a provision of the long arm statute, Meemic has not had sufficient minimum contacts with South Dakota to comport with federal due process requirements for the circuit court to exercise personal jurisdiction over Meemic.

[¶20.]        We apply a three-step analysis for this federal due process inquiry as articulated in *Kustom Cycles*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws.  Second, the cause of action must arise from [the] defendant's activities directed at the forum state.  Finally, the acts of [the] defendant must have substantial connection with the forum state to make the exercise of jurisdiction over [the] defendant a reasonable one.

2014 S.D. 87, ¶ 10, 857 N.W.2d at 407 (citations omitted).

[¶21.]        This constitutional analysis stems from *International Shoe*, in which the United States Supreme Court expanded the ability of states to exercise jurisdiction over non-resident defendants, conditioned on meeting the requirements of federal due process.  326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).  Eschewing a rigid requirement centered on the defendant's presence in the state, the Court emphasized an analysis of the "quality and nature" of contacts with the forum state. *Id.* at 319, 66 S. Ct. at 160.  Where "minimum contacts" allow a defendant to enjoy the "benefits and protection[s]" of the laws of a forum state, and where "traditional notions of fair play and substantial justice" are upheld, a court may exercise personal jurisdiction. *Id.* at 316–19, 66 S. Ct. at 158–60 (citations omitted).  These contacts must be substantial enough to cause a non-resident defendant to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980) (citations omitted).  The contacts cannot be random, isolated, or fortuitous and must arise from the defendant's activities. *Marschke*, 2007 S.D. 125, ¶ 12, 743 N.W.2d at 405–06.

[¶22.]     Where a court seeks to exercise personal jurisdiction over a party not based within the forum state, the party must have purposefully availed itself to the privileges and contacts within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985). Jurisdiction cannot be exercised on the basis of "unilateral activity of another party or a third person," but rather is proper:

> where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76, 105 S. Ct. at 2183–84 (citations omitted). The Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction" so long as the defendant's "efforts are purposefully directed toward residents of another State[.]" *Id.* at 476, 105 S. Ct. at 2184 (cleaned up). In analyzing whether a foreign insurer has engaged in "minimum contacts" necessary to support the exercise of personal jurisdiction in a foreign state, the court must consider whether the insurer's contacts were "compelled by the unilateral actions of the insured, or were created by circumstances over which the insurer had no control." 16A Couch on Ins. § 228:33 (3d ed.).

[¶23.]     While this Court has, under certain conditions, found the exercise of personal jurisdiction over foreign insurers proper, the facts and circumstances in each case are readily distinguishable from the present matter. In *State v. American Bankers Ins. Co.*, the State brought an action to collect premium taxes from

American Bankers Insurance Company, a Texas-based corporation that had bought an insurance company that was providing insurance to South Dakota residents. 374 N.W.2d 609, 611 (S.D. 1985). American Bankers was never licensed to transact business in South Dakota, but it did not cancel the pre-existing insurance policies issued to South Dakota residents. *Id.* American Bankers challenged the court's ability to exercise personal jurisdiction, contending that it did not have sufficient minimum contacts with South Dakota. *Id.* The Court found that the exercise of personal jurisdiction over American Bankers comported with requirements of federal due process, noting:

> [t]he subject matter of this action directly flows from the economic consequences of American Bankers' *ongoing commercial activities with residents of South Dakota.* Inasmuch as the insurance policies themselves are the object of the tax, we hold that American Bankers could reasonably have foreseen being haled into court in South Dakota to account for its economic activity here.

*Id.* at 613 (emphasis added). Thus, in *American Bankers,* the foreign insurer held policies of *South Dakota residents*, establishing minimum contacts sufficient for a finding of personal jurisdiction. Conversely, in the instant case, Meemic, a Michigan insurer, provided an insurance policy for Davis, a Michigan resident. It is by virtue of Davis's unilateral acts that Meemic was compelled to have contact with South Dakota—a circumstance over which Meemic had no control.

[¶24.] In *Rothluebbers v. Obee*, the Rothluebbers, German residents, brought action against a German tour company, Agrar, and a German tour director, Obee, in Pennington County, South Dakota, for injuries and damages sustained in a one-vehicle accident in Pennington County. 2003 S.D. 95, ¶¶ 2–4, 668 N.W.2d at 315–

16. Obee, the driver of the Agrar van, had allegedly committed the tort in South Dakota that gave rise to the wrongful death and personal injury actions. *Id.* This Court reasoned that because Obee and Agrar were experienced tour operators who purposefully chose to conduct tours in South Dakota, the possibility of being "hauled into court" in South Dakota was foreseeable. *Id.* ¶ 29, 668 N.W.2d at 323. To that end, the defendants had purposefully availed themselves to the privilege of conducting activities within the state. Conversely, in the present matter, Meemic was not directly engaged in conduct in South Dakota. Furthermore, Meemic bore no involvement in or responsibility for the accident that took place in South Dakota that gave rise to Davis's tort injuries and damages.

[¶25.] In *Klenz v. AVI International*, the mother of a German foreign exchange student residing with a South Dakota host family brought an action against the student's foreign insurance broker, AVI International, to recover legal expenses incurred in a wrongful death suit. 2002 S.D. 72, ¶¶ 1–5, 647 N.W.2d 734, 735–36. AVI filed a motion to dismiss, asserting a lack of personal jurisdiction, which the circuit court denied. *Id.* ¶ 5, 647 N.W.2d at 735–36. On appeal, AVI contended that it lacked sufficient minimum contacts with South Dakota to warrant the exercise of personal jurisdiction. *Id.* ¶ 11, 647 N.W.2d at 736. Further, AVI asserted that because it was merely an insurance broker, it could not have anticipated being haled into court in South Dakota. *Id.* This Court noted that "[w]hile AVI may not [have been] the primary insurer, it did issue a 'Security Pass'Port'" to the exchange student, which operated as an insurance policy. *Id.* ¶ 13, 647 N.W.2d at 737. This Court concluded that because the student, on exchange

with a host family in South Dakota, had been covered by the provisions of AVI's "Security Pass'Port" when he was killed in an accident that occurred in South Dakota, AVI could have foreseen being haled into court in South Dakota. *Id.* ¶ 15, 647 N.W.2d at 737. As such, the exercise of personal jurisdiction over AVI comported with federal due process considerations.

[¶26.] As in *Klenz*, the accident giving rise to Davis's claims in this case occurred in South Dakota and was caused by a South Dakota resident. However, in *Klenz*, AVI knowingly issued a policy to a student temporarily residing in the state with a South Dakota host family. The insurer thus knew that the policy was intended to provide continuous coverage in South Dakota—far from a random, isolated, or fortuitous event or act. In the present matter, Davis's unilateral actions compelled Meemic's alleged contact with South Dakota. Therefore, the minimum contacts required to warrant a finding of jurisdiction are not met.

## Conclusion

[¶27.] A South Dakota court's exercise of personal jurisdiction over Meemic under these circumstances is improper under SDCL 15-7-2. Moreover, a court faced with the facts presented here cannot exercise personal jurisdiction over a non-resident insurer on the basis of a breach of contract claim between a non-resident insured and non-resident insurer who has not engaged in significant activities within the state. As such, the minimum contacts necessary to support the exercise of personal jurisdiction in accordance with due process requirements are not satisfied. We reverse the circuit court's denial of Meemic's motion to dismiss and

remand to the circuit court for entry of an order dismissing Davis's claim against Meemic for lack of personal jurisdiction.

[¶28.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.